UNITED STATES DISTRICT COURT
SOUTHERN  DISTRICT OF NEW YORK
---------------------------------------------------------------X
In the Matter of the Complaint/Claim of
UDE ONUOHA

                        Plaintiff,

   -against-

THE CITY OF NEW YORK, as Owner and Operator
of the SANDY GROUND M/V, ROBERT LACEY,
WHITE HALL TERMINAL, and John Does 1-30,
Currently unknown defendants.

                      Defendants
---------------------------------------------------------------X

                      **CLAIM/COMPLAINT**
                      **FRCP Supp**. **Rule F**
                      **(JURY DEMANDED)**

      The Claimant/Plaintiff, by his attorney, Gary Rawlins, of Rawlins Law, PLLC, alleges the following Claim pursuant to the Federal Rules of Civil Procedure, Supplemental Admiralty Rule F, and alleges the following Claims pursuant to Federal Rules of Civil Procedure Rule 14 (c), upon information and belief:

**JURISDICTION**

    1.     That this claim is brought on behalf of Claimant/Third Party Plaintiff who was on board the SANDY GROUND on August  23, 2022 and under the General Maritime Law of the United States and all statutes amendatory thereof, as this is an admiralty and maritime claim

within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure, and is brought pursuant to 28 U.S.C. §1331(1) and 28 U.S.C.§1333, by virtue of which this Honorable Court has jurisdiction over the parties and the subject matter of this action.

2.  Although timely served with a notice of claim within six months, the defendants have failed to file a complaint seeking relief or moved for an order for: Value and/or Undertaking, Directing Issuance of Notice, Restraining Suits and Directing the Filing of Claims.

3.  Plaintiff/claimant reserves the right to move pursuant to Federal Civil Procedure Rule 14 c.

## THE PARTIES

4.  The Claimant/Plaintiff UDE EMEKA, Jr. was a passenger on board the ferryboat, M/V SANDY GROUND on August 23, 2022.

5.  The Defendant, the City of New York, is a Municipal Corporation organized and existing by virtues of the laws of the State of New York.

6.  The Department of Transportation of the City of New York is an agency of the Plaintiff, the City of New York. The Department of Transportation of the City of New York was created by §2901 of the Charter of the City of New York, which states:

> There shall be a Department of Transportation, the head of which shall be the Commissioner of Transportation.

7. Defendant, ROBERT LACEY, was an employee of the Plaintiff, City of New York, on and about August 23, 2022.

8. The Defendant Ydanis Rodriguez, was the Commissioner of Transportation for the Defendant, City of New York on or about August 23, 2022..

9. The Defendants, Does 1-30, were employees of the Defendant, including a Captain and Deckhands.

10. Defendants, JOHN DOES 1-30, are currently unknown individuals, corporations, or other entities, and whose identities through the exercise of reasonable investigation could not be identified, but are named to preserve any causes of action the Claimant/Plaintiff may have against said individuals in the event it is discovered they created, contributed or are otherwise culpable in their conduct for causing this accident. It is alleged that JOHN DOES 1-30 owned, operated and controlled the M/V SANDY GROUND, and were charged with the maintenance, inspection seaworthiness, crewing and piloting of the ferry.

## COURSE OF EMPLOYMENT

11. All of the acts and omissions alleged herein occurred while the Defendants were acting within the scope of their employment with the Plaintiff, City of New York.

12. All of the acts and omissions alleged herein occurred while the Defendants were discharging their duties for the Plaintiff, City of New York.

13. The acts or omissions that were a cause of the August 23, 2022 ferry incident occurred while the Defendants were acting within the scope of their employment with the Plaintiff, City of New York.

14. The acts or omissions that were a cause of the August 23, 2022 ferry accident occurred while the Defendants were discharging their duties for the Defendant, City of New York.

## THE FERRY SYSTEM

15. The Defendant, City of New York, operated ferries within New York harbor on the date the incident occurred.

16. The Defendant, City of New York, currently lists on the web site of the Department

of Transportation of the City of New York the operator of the Staten Island Ferry to be:

>New York City Department of Transportation
>
>New York Division
>
>Whitehall Ferry Terminal
>
>New York, New York 10301
>
>(718) 815-BOAT

17. The ferry service operated by the Defendant, City of New York, on and about August 23, 2022 was known as the Staten Island Ferry.

18. On and about August 23, 2022 the route traveled by the Staten Island Ferry was between the St. George Ferry Terminal in Staten Island, New York and the Whitehall Ferry Terminal in lower Manhattan.

19. Control over and responsibility for all of the functions and operations of the Defendant City of New York, relating to transportation, including the ferries, was in the hands of the Commissioner of the Department of Transportation on and about .

>§2903 of the Charter of the City of New York says in pertinent part that
>
>>... the commissioner shall have control over
>>and be responsible for all those functions
>>and operations of the city relating to
>>transportation including, without limitation,

the following... §2903 (c) Ferries and related facilities ....

20. Under §2903 (c) (1) of the Charter of the City of New York, the Commissioner of the Department of Transportation of the City of New York, had the duty to maintain and operate the ferries of the Defendant, City of New York.

21. Under §2903 (c) (2) of the Charter of the City of New York, the Commissioner of the Department of Transportation of the Defendant, City of New York, had the duty to construct acquire, operate, maintain and control all ferry boats, ferry houses, ferry terminals and equipment thereof.

22. Under §2903 (c) (3) of the Charter of the City of New York, the Commissioner of the Department of Transportation of the Defendant, City of New York, had charge and control of all marine operations within the geographical borders of the Plaintiff, City of New York, and the power to regulate public and private ferry operations originating or terminating within the geographical borders of the Plaintiff, City of New York.

**THE M/V**

23. The M/V SANDY GROUND was a ferry on August 23, 2022. The M/V SANDY GROUND was a ferry boat that was part of the fleet of the Staten Island Ferry on and about August 23, 2023.

23. The M/V SANDY GROUND was, upon information and belief, approximately 69.8 feet in breadth.

24. The M/V SANDY GROUND was, upon information and belief, approximately 3,335 gross registered tons.

25. The M/V SANDY GROUND was powered by engines that produced, upon information and belief approximately 7,000 horsepower.

**EQUIPMENT**

26. It was the duty of the Defendant, the City of New York, to make sure that all boats that comprised the Staten Island Ferry had proper equipment and decks.

27. It was the duty of the Defendant, the City of New York, to make sure that all ferry boats that comprised the Staten Island Ferry had proper communication devices.

28. It was the duty of the Defendant, the City of New York, to make sure that all ferry boats

that comprised the Staten Island Ferry had proper equipment to assist its crew members in the event of an emergency.

29. It was the duty of the Defendant, the City of New York, to make sure that all ferry boats that comprised the Staten Island Ferry had proper equipment to assist its crew members in the event of an emergency that were properly functioning.

30. On August 23, 2023, the crew members of the M/V SANDY GROUND were not supplied with communication devices by the Defendant, the City of New York.

31. On August 23, 2023, the crew members of the M/V SANDY GROUND were not supplied with radios by the Defendant, the City of New York.

32. On August 23, 2023, the crew members of the M/V SANDY GROUND were not supplied with walkie-talkies by the, the City of New York.

33. On August 23, 2023, the crew members of the M/V SANDY GROUND were not supplied with any type of hand held communication device to alert the Captain and/or Assistant Captain of an emergency.

34. On August 23, 2023, the crew members of the M/V SANDY GROUND were not supplied with any type of hand held communication device to alert the pilothouse of an emergency.

35. On August 23, 2023, the M/V SANDY GROUND did not have in place any type of equipment that would alert its crew members of an unsafe entry area to the SANDY GROUND.

### SAFETY MANAGEMENT SYSTEMS

36. On and prior to August 23, 2023, a Safety Management System (SMS) was a maritime industry standard.

37. On and prior to August 23, 2023, a Safety Management System (SMS) was a maritime industry standard for the operation of a ferry system.

38. On and prior to August 23, 2023, a Safety Management System (SMS) was a maritime industry for the operation of transporting passengers.

39. On and prior to August 23, 2023, a maritime industry standard was the implementation of a Safety Management System (SMS).

40. On and prior to August 23, 2023, a maritime industry standard was the development of a Safety Management System (SMS).

41. On and prior to August 23, 2023, a Safety Management System (SMS) required a delineation of levels of authority.

42. On and prior to August 23, 2023, a Safety Management System (SMS) required a delineation of lines of communication.

43. On and prior to August 23, 2023, a Safety Management System (SMS) required written procedures to cover all aspects of an operation, including the boats, terminals, maintenance, operations, management and administration for the operation of the Staten Island Ferry.

44. On and prior to August 23, 2023, the Defendant, City of New York, did not have in effect a Safety Management System (SMS) with written procedures to cover all aspects of the operation of the boats, terminals, maintenance, operations, management and administration of the Staten Island Ferry.

45. On and prior to August 23, 2023, the Defendant, City of New York, did not have in effect a Safety Management System (SMS) for the operation of the Staten Island Ferry.

46. On and prior to August 23, 2023, the, City or New York, did not have in effect written rules for a Safety Management System (SMS) for the Staten Island Ferry.

47. On and prior to August 23, 2023, the City of New York did not have a position known as Chief Operations Officer of the Staten Island Ferry.

48. On and prior to August 23, 2023, the City of New York, did not have a Bridge Team Management program in the operation of the Staten Island Ferry.

49. On and prior to August 23, 2023, the , City of New York, did not have a position established known as Chief Senior Port Engineer of the Staten Island Ferry.

50. On and prior to August 23, 2023, the, City of New York, did not have a position established known as Chief Senior Port Captain of the Staten Island Ferry.

51. On and prior to August 23, 2023, the City of New York, did not have a position established known as Chief Senior Port Safety Manager of the Staten Island Ferry.

52. On and about August 23, 2023, the owner of the M/V SANDY GROUND was the City of New York.

53. On and about August 23, 2023, there were no owners of the M/V SANDY GROUND other than the , City of New York.

54. On and about August 23, 2023, the operator of the M/V SANDY GROUND was the City of New York.

55. On and about August 23, 2023, there were no operators of the M/V SANDY GROUND other than the City of New York.

56. On and about August 23, 2023, the City of New York, was in control of the M/V SANDY GROUND.

57. The M/V SANDY GROUND had a crew at the time of the incident including a Captain, Assistant Captain, and two mates and deckhands.

## LICENSES

58. The Defendant, Captain Doe, was properly licensed to navigate the M/V SANDY GROUND in the navigable waters between Manhattan, New York and Staten Island, New York.

59. UDE ONUOHA was injured when he slipped, tripped and fell on the entrance area to the boat.

## LIABILITY

60. The fall occurred due to the negligence and other culpable conduct of the City of New York, their agents, servants, employees and those for whom they are vicariously responsible.

61. The incident and/or allision occurred due to the gross, wanton and reckless conduct of the City of New York.

62. At the time of the accident, the M/V SANDY GROUND was not a seaworthy vessel.

63. At all times hereinafter mentioned, the Defendant, City of New York, had privity and knowledge as to the unseaworthiness of the M/V SANDY GROUND.

64. At all times hereinafter mentioned, the, City of New York, had privity and knowledge as to actions and inactions of the crew members on aboard he M/V SANDY GROUND.

65. At all times hereinafter mentioned, the City of New York, had privity and knowledge as to the improper customs and practices followed by its crew members on board the M/V SANDY GROUND.

66. That prior to the accident, the Management and Administration of the, City of New York, was aware of the improper customs and practices followed by the crew of the M/V SANDY GROUND at the time of the incident.

67. That prior to the incident, the Management and Administration of the, City of New York, had actual knowledge that its crew members were committing statutory violations on board the M/V SANDY GROUND and did not take the appropriate action to correct the situation.

68. That prior to the incident, the Management and Administration of the City of New York had constructive knowledge that its crew members were committing statutory violations on board the M/V SANDY GROUND and did not take the appropriate action to correct the situation.

69. That prior to the incident, the City of New York was derelict in enforcing the rules and regulations to operate a ferry and they had notice that these rules were not being followed.

70. The co-defendants were aware of the improper customs and practices followed by the crew of the M/V SANDY GROUND at the time of the incident.

71. The Defendants were aware of the improper customs and practices followed by the crew of the M/V SANDY GROUND at the time of the incident.

72. The Defendants were aware of the improper customs and practices followed by the crew of the M/V SANDY GROUND at the time of the incident.

73. That despite its knowledge of the improper customs and practices followed by the crew of the M/V SANDY GROUND, the management of the Defendants took no action to correct the conduct of its crew members, employees, agents and servants.

74. Prior to August 23, 2023 the standard operating procedures for the Staten Island Ferry in effect on August 23, 2023 that were promulgated by the City of New York, that were in written form, were not distributed by the City of New York, to the crew members of the M/V SANDY GROUND.

75. On, before, and after the date of the incident, the Defendants owned, operated, maintained, controlled, managed supervised, took care of, repaired, and had a duty to operate, manage, maintain, supervise, take care of, control, repair the Staten Island Ferry.

76. The City of New York and Defendant(s) and their(its) agents servants, crew employees and/or persons for which the Defendant(s) are vicariously liable were negligent, careless,

reckless, grossly negligent, willful, wanton and otherwise culpable and deserving of blame in the ownership, operation, control, maintenance, management, control and repair of the Staten Island Ferry, including the M/V SANDY GROUND; in failing to take into consideration the weather, tides and wind conditions that existed at the time of the accident; **in failing to furnish a safe place to be a passenger on board the vessel**; in failing to furnish the Claimant/Plaintiff with an adequate and properly trained crew; in failing to properly train and instruct its crew members; in failing to administer proper medical examinations of its crew; in failing to properly monitor the medical conditions of its crew members; in negligently hiring incompetent and incapable crew members; in failing to perform the duties required of a shipowner; in failing to maintain the ship's equipment in good working condition; in failing properly inspect the vessel; in failing to keep a proper look out; in failing to inform its crew members of the proper rules and regulations relating to the operation of the vessel; in providing an unseaworthy vessel to its passengers; in failing to abide by the requisite safety statutes and regulations, both governmental and private; in operating the vessel at an unsafe speed; in not following the normal approach pattern to the dock; in failing to keep the vessel properly aligned as it approached the dock; in being undermanned; in not having the appropriate crew members present in the wheelhouse during the operation of the vessel; in violating its Certificate of Inspection; in failing to keep on board properly functioning equipment; in failure to perform the duties required of a shipowner; in failing to maintain the ship's equipment in good working condition; in under staffing the vessel; in performing work labor and services in a negligent manner; in failing to hire and train competent persons and crew to perform work on the vessel and mange the same; in the administrators of the Plaintiff being aware of improper

practices but failing to correct them; res ipsa loquitur; in failing to give proper warnings to its passengers and crew members; in failing to properly evacuate the passengers on board the vessel; in failing to abide by the requisite safety statutes and regulations, both governmental and private; in violating statues, rules, regulations, customs and usages that this court will take judicial notice at the time of trial; in being otherwise culpable and blameworthy.

### U.S.C.G. NAVIGATION RULES AND REGULATIONS

77. The Plaintiff violated the navigation rules and regulations of the United States Coast Guard including not limited to: Claimant/Plaintiff herein invokes the "PennsylvaniaDoctrine" (86 U.S. 125 Sup. Ct. 1874), which shifts the burden to the Plaintiff, the City of New York, whereby the Plaintiff, City of New York, must prove that the statutory violations did not or could not cause the incident.

78. That the Defendant, City of New York, permitted allowed and acquiesced in an unsafe and unseaworthy situation to come into existence and continue to exist on board the M/V SANDY GROUND and all it appurtenances and appliances thereto, by failing to provide the Claimant with proper medical attention.

### CAUSATION

79. The Plaintiff suffered injuries, pain, suffering, loss of enjoyment of life, a serious injury and other damages and adverse consequences as a direct and proximate result of the aforesaid, culpable

conduct of the Defendant, City of New York and co-Defendants and the unseaworthiness of the vessel and crew.

## NOTICE OF CLAIM

80. Claimant/Third Party Plaintiff serviced a Notice of Claim upon the Office of the Comptroller of the City of New York within six months of the happening of this incident.

81. More than thirty (30) days have elapsed since the service of the Notice of Claim on behalf of the named Claimant/Plaintiff and the claim has not been adjusted by the Plaintiff, City of New York.

82. The service of a Notice of Claim upon the Plaintiff, City of New York, is not a prerequisite to being a claimant in this action as this matter is governed by General Maritime Law, therefore, New York State Law including General Municipal Law, is pre-empted. Scholl v. Town of Babylon, 95 A.D.2d 475, 466 N.Y.S.2d 976, 1984 A.M.C. 157 (2nd Dept. 1983).

WHEREFORE, the Claimant/Plaintiff respectfully requests that the Court grant a judgment against the Plaintiff and Defendants on each causes of action together with interests from the date of each cause of action accrued, costs, disbursements, punitive damages and attorneys' fees.

Dated: Brewster, New York

      August 23, 2023

                          Rawlins Law, PLLC
                          By: /s/ *Gary N. Rawlins*
                          Gary N. Rawlins
                          Attorneys for Claimant/Plaintiff
                          UDE   ONUOHA
                          12 Main Street, Suite 287
                          Brewster, NY 10509
                          (212) 926-0050